## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, Michael E. Kane, being duly sworn, depose and state as follows:

1.   I am an investigative or Law Enforcement Officer of the United States within the meaning of Title 18, United States Code, and Section 2510(7), that is, an Officer of the United States who is empowered to conduct investigations of and to make arrests for the offenses enumerated in Title 18 and Title 21 of the United States Code.

2.  I have been employed as a Task Force Officer (TFO) with the United States Drug Enforcement Administration ("DEA") since August 2013. I am currently assigned to the Cleveland DEA Resident Office.

3.  In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including, but not limited to, violations of Title 21, United States Code, Section 841, 843, 846, 848, 856, 860, 960, and 963, and Title 18, United States Code, Sections 1952 1956, and 1957. I have received training in the enforcement of drug laws, the investigation of drug trafficking and drug organizations, in drug recognition and terminology, undercover operations, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance.

4.  I have participated in various investigations concerning the unlawful importation, possession with intent to distribute, and distribution of controlled substances, use of communication facilities to cause or facilitate the distribution of controlled substances, and conspiracy to commit such offenses, in violation of Title 21, United States Code, Sections 952, 960, 841(a)(1), 843, 846, and 963.

## **BACKGROUND**

5.  Fentanyl is a very potent Schedule II synthetic opiate that is approximately 80-100 times more potent than Morphine. By comparison, heroin is approximately only three times more potent than Morphine. Fentanyl was developed in the 1960's as an intravenous anesthetic for medical surgeries. Currently there are several forms of medical Fentanyl marketed in the United States.  Fentanyl is primarily used to treat pain and as a general or regional surgical anesthetic. Fentanyl is available in a liquid for injection (brand name Sublimaze), adhesive patch (brand name Duragesic), raspberry lozenge (brand name Actiq) and powder forms.  Numerous street analogs of Fentanyl have been illegally produced and sold/used under many names, including alpha-methylfentanyl, AMF, 3-methylfentanyl, China White, Persian White and synthetic heroin.

6.  Cocaine is a powerful alkaloid contained in the leaf of the coca bush, which is cultivated chiefly in the South American Countries of Peru, Bolivia and Colombia. Cocaine is a powerful and fast acting stimulant. The widespread use of cocaine lead to an understanding of the addictive nature of the drug and as a result was listed as a Schedule II drug. Today, cocaine is as a local anesthetic, primarily for ear, nose and throat surgeries.  It is widely abused and generally appears in the illicit market as a white or off-white crystalline powder.  Cocaine is commonly snorted, but may also be dissolved in water and injected. Cocaine also appears in freebase form as either freebase crystals or crack, both of which are smoked.

7.  Based on my conversations with other law enforcement officers and intelligence information from the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL), I am aware of the prevalence of fentanyl related overdoses and deaths that have gone from a sporadic community emergency to a fairly commonplace event. In 2013, 5 fentanyl overdose deaths

occurred, with only one being expressly connected to illicit activity. That increased more than seven fold, with 37 fentanyl-related deaths for 2014. The death total for 2015 nearly tripled, with 89 confirmed ruled cases. In 2016, the death total is already at 19. In January 2016, suspected fentanyl deaths set an all-time record and coupled with suspected heroin deaths, caused the greatest death toll ever recorded in a single month in Cuyahoga County. With multiple local sources feeding the illicit marketplace, current patterns suggest that fentanyl may now become a more regular occurrence.

## THE INVESTIGATION

8. On February 3, 2016, at approximately 8:45 a.m., members of the CHPD CST (Cleveland Heights Police Department Crime Suppression Team), CCSO (Cuyahoga County Sheriff Office), and the DEA CRO Task force conducted an operational debriefing in the City of Cleveland Heights in anticipation of conducting a traffic stop of Ryan GASTON and a subsequent search warrant at his residence, 24445 Garden Drive, Apartment 606, Euclid, Ohio, 44123. At the same time, CHPD CST Sergeant Chris Skok conducted surveillance in the area of GASTON's residence and observed GASTON's vehicle, a black Honda Accord, bearing no bumper or front plate, backed into the detached garage, space #53, at the Garden Drive location. Subsequently, members of the DEA CRO established surveillance of GASTON's apartment complex and vehicle.

9. At approximately 10:21 a.m., TFO Chris Giordano observed GASTON's vehicle, a black Honda Accord, bearing no front bumper or plate, emerge from the driveway area north of garage space #53. GASTON's vehicle, bearing rear Ohio license plate GGS-5445, then traveled westbound to Babbitt Road and then traveled southbound on Babbitt Road, as observed by TFO Taylor Cleveland and CCSO K-9 Officer Mike Twombly.

3

10.  At approximately 10:25 a.m., CCSO K-9 Officer Twombly conducted a traffic stop of GASTON's black Honda Accord in the area of Babbitt Road and I-90, Euclid, Ohio 44123 for several equipment violations.  During the stop, canine "Ciga" was detailed around the exterior of the vehicle.  Canine Ciga alerted to the odor of an illegal narcotic emanating from the vehicle near the passenger's side bumper and on the passenger's side door.  Both front windows on the vehicle were rolled down.  Canine Ciga's trained response after smelling the odor of an illegal narcotic is to sit.  After canine Ciga alerted on the vehicle, GASTON stated his friends were smoking marijuana in the car the day prior.  Officer Twombly began to search the interior of the vehicle, at which time he located a plastic bag with suspected crack cocaine and a digital scale hidden in a compartment under the radio.  A field test was conducted and was positive for the presence of cocaine base, a Schedule II drug.  Also located in the bag were 42 blue round pills.  Commander Leppla and Detective Martin took possession of the items from Officer Twombly.  At that time, GASTON was taken into custody, arrested and transported to Euclid jail by TFO Luke Combs.

11.  At approximately 10:47 a.m., SA Shaun Moses and TFO Giordano knocked and identified themselves as law enforcement officers at 24445 Garden Drive, Apartment 606, for the purpose of securing the residence pending obtainment of a State of Ohio narcotics search warrant.  For approximately the next several minutes, investigators advised a female (later positively identified as Chelsea Paul), to open the apartment door.  Investigators/agents advised Paul that GASTON had been arrested and she needed to open the door to talk to agents/officers.  During this time, Paul refused to open the apartment door, identify herself, and advised that she needed to get dressed several times. TFO Giordano subsequently forced entry to apartment door #606 and located Paul standing in front of the interior apartment door fully clothed with high top

4

shoes on.  Paul identified herself to agents/officers as Chelsea Paul.  Paul then advised she was just staying the night at apartment 606 and did not know what was going on.  However, according to Bureau of Motor Vehicle records, Paul has a driver's license registered at apartment 606.  At this time, Paul was uncooperative, highly agitated, nervous, and yelled at said investigators, including TFO Taylor Cleveland, who assisted investigators.  Investigators/agents then quickly secured apartment 606 for a pending narcotics search warrant and located no other individuals at the location.

12.  Paul then began to calm down, identified herself to investigators via a social security number and date of birth.  Paul told investigators/agents that she may have warrants for her arrest.  At this time, Paul maintained that she did not live at GASTON's apartment.  Paul then identified her rose colored I-phone to investigators and advised she wished to keep it with her.  Paul subsequently gave consent for said investigators to search her I-Phone.  Paul then read, signed, and acknowledged DEA Form 88, Consent to Search, for her rose colored Apple I-phone, 216-820-5182, as witnessed by TFO's Giordano and Cleveland. TFO Cleveland then conducted a manual search of Paul's cell phone, as witnessed by TFO Giordano, which indicated several outgoing phone calls had been made to a phone known to be utilized by GASTON on 2-3-16 at approximately 10:50 a.m. and 10:52 a.m..  TFO Cleveland observed no further information or photographs on Paul's cell phone which indicated nefarious activity related to drug trafficking.  Paul's cell phone was then given back to her.  During this time, TFO Giordano verified with EPD (Euclid Police Department) Detective Jose Alcantara that Paul had a confirmed warrant with EPD and an active warrant with BPD (Beachwood Police Department).  Paul then admitted to investigators that she was trying to contact GASTON on her cell phone while investigators were formerly knocking/announcing themselves as law enforcement officers

outside apartment door #606. At this time, TFO Giordano verbally advised Paul of her Advice to Rights and informed her EPD would be placing her into custody for her confirmed EPD warrant.

13. At approximately 11:20 AM, EPD Detective Alcantara and uniformed EPD officers arrived at GASTON's residence and placed Paul into custody without incident. Investigators from the CHPD CST/DEA CRO secured apartment 606 in anticipation of obtaining a narcotics search warrant.

14. At approximately 11:47am, a search warrant was secured for the apartment from Cuyahoga County Common Pleas Judge Mike Donnelly. TFO's Giordano/Cleveland, SA Shaun Moses, CHPD Detectives Block, Bodamer, Ziska and Commander Leppla, and TFO Kane searched the apartment. The following items were seized: a Zip Loc bag containing approximately 884 pills believed to be Oxycodone 30 mg, found by Leppla inside a black jacket was located in the northeast bedroom (which was tested by the Cuyahoga County Regional Forsensic Laboratory and found to contain fentanyl, a Schedule II controlled substance); a 9mm High Point semi auto riffle serial #A82869 with loaded clip (not in the gun) located in the furnace closet by TFO Giordano and SA Moses; a baggie containing 4.3 gross grams of suspected crack cocaine located in a denim jacket in the northeast bedroom by Detective Block; $915.00 found in a plastic bag behind the furnace by Commander Leppla; $582.00 found in plastic container front hall closet by Commander Leppla; and approximately 17 bags containing suspected cocaine powder residue found by TFO Kane in the kitchen garbage can. Items observed inside of the house included mail addressed to GASTON.

15. All evidence from both the car and the apartment were returned to CHPD and booked into evidence. The suspected crack cocaine and the white powder residue field tested positive for cocaine by Sergeant Skok and Commander Leppla.

16. Commander Leppla test fired both of the guns, which were found to be in good working condition.

17. On February 4, 2016, the 42 pills found in GASTON'S car, 884 pills from GASTON'S apartment, along with the suspected cocaine residue and crack cocaine, were transported by Detective Ziska to the Cuyahoga County Regional Forensic Science Laboratory for analysis.

18. On or about February 9, 2016, Cuyahoga County Regional Forensic Science Laboratory advised that the two singly scored round blue tablets that were tested (out of the 42 pills seized) found in GASTON's vehicle tested positive for Fentanyl, a Schedule II controlled substance. On or about February 11, 2016, Cuyahoga County Regional Forensic Science Laboratory provided TFO Kane with a laboratory report which revealed that they used a statistical sampling method and found that the singly scored round blue tablets (883 pills) found in GASTON's apartment tested positive for Fentanyl, a schedule II controlled substance. In addition, the laboratory found that the residue on a scale tested positive for cocaine, a Schedule II drug, as well as nine rocks (of 32 submitted) tested positively for cocaine base, a Schedule II drug.

19. Based upon the foregoing, there is probable cause to believe that RYAN GASTON has committed violations of 21 U.S.C. § 841(a)(1),(b)(1)(B), that is Possession with Intent to Distribute Cocaine Base (crack) and Possession with Intent to Distribute Fentanyl, both Schedule II controlled

substances.

Affiant further sayeth not.


Michael E. Kane
Task Force Officer, DEA


Sworn to and subscribed before me on the _____ day of February, 2016.


Kenneth S. McHargh
UNITED STATES MAGISTRATE JUDGE

8